


UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MENTHA SMITH and JUSTIN GOSSETT, on behalf of themselves and all others similarly situated,<br>Plaintiffs,<br><br>v.<br><br>T-MOBILE USA, INC. and POWERTEL, INC.,<br>Defendants. | CASE NO.: CV 05-5274 ABC (SSx)<br><br>ORDER RE: DEFENDANTS' MOTION FOR RECONSIDERATION |

Pending before the Court is Defendants' Motion for Reconsideration, filed on July 16, 2007. Plaintiffs filed an Opposition on July 30, and Defendants filed a Reply on August 6, 2007. The Court found the Motion appropriate for determination without oral argument and took the matter under submission. See Fed. R. Civ. Pro. 78; Local Rule 7-15. Upon consideration of the materials submitted by the parties and the case file, the Court hereby GRANTS Defendants' Motion.

//

//

//

239

## I. BACKGROUND

On July 20, 2005, Plaintiffs Mentha Smith and Justin Gossett, former employees of Defendants T-Mobil and Powertel, filed a Complaint for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et. seq.*, violations of California Labor Code § 200 *et. seq.*, and California Business and Professions Code 17200, *et. seq.* Plaintiffs claim that Defendant, a national provider of wireless voice messaging and data services, had a policy and practice of violating federal and state wage and hour laws by failing to pay employees for hours worked and for failing to pay overtime worked. Plaintiffs allege that there are approximately 15,000 similarly-situated potential plaintiffs nationwide, and seek conditional certification of this case as an FLSA collective action to facilitate notice to the class. Plaintiffs define the class as "All hourly employees and former employees of T-Mobile nationwide who worked at T-Mobile at any time for the period from three years predating the filing of this complaint to the present." Pls' Mot. For Cond. Cert. ("Pls' Mot.") 5:26-6:2.

Plaintiffs first moved for conditional class certification on October 26, 2005. In a minute order of November 15, 2005, the Court denied Plaintiffs' motion without prejudice to its refiling, and "permitted [the parties] to conduct discovery in anticipation of another motion for conditional certification." Since then, the parties have engaged in apparently substantial discovery. As part of the discovery, Defendants produced, pursuant to a motion to compel, the names and addresses of 10 percent of the members of the prospective class, that is, information about approximately 1,500 persons. Thereafter, Plaintiffs mailed notices to "a percentage of the employees identified." Pls' Mot. 6:1-2. Thirty-three persons

responded to the notice and provided Plaintiffs with declarations in support of their second Motion for Conditional Certification, filed on March 6, 2007. Plaintiffs represent that these declarations come from potential plaintiffs in 17 different states, who worked at 38 different store locations, under at least 41 different managers. The declarations recount various occasions in which the declarants contend that they worked off-the-clock, or were not paid overtime. Named Plaintiffs Smith and Gossett also filed their own declarations stating that they were not compensated for time worked, were not paid overtime, that other employees also worked without compensation, and that it was Defendants' policy to not pay overtime. In their Second Motion, Plaintiffs contended that this showing is sufficient to merit conditional class certification to facilitate notice to the putative class under the lenient "first tier" analysis.

In opposing Plaintiffs' Motion, Defendants argued that enough discovery had taken place to warrant review of the motion under the more demanding "second tier" analysis, which Defendants contended Plaintiffs could not satisfy. Defendants also argued that Plaintiffs could not satisfy the first-tier analysis in any event. In support of their opposition, Defendants submitted a declaration from Keith Kleckner, payroll supervisor, purporting to "impeach" two thirds of Plaintiffs' thirty-three declarations, and declarations from a number of store managers and human resources mangers stating that T-Mobile does not have a policy of refusing to pay overtime.

On June 14, 2007, the Court applied the "first tier" analysis to Plaintiffs' Second Motion, based partly on the view that significant discovery was still ongoing, and issued a minute order granting Plaintiffs' Motion for conditional certification. Defendants seek

reconsideration on the ground that the court failed "to consider material facts presented to the Court. . ." Local Rule 7-18(c). Specifically, Defendants argue that the Court did not consider the declarations it provided in support of its opposition, and that those declarations disprove some of Plaintiffs' claims, thereby precluding a finding that the potential collective action members are "similarly situated." Defendants also point out that critical lines of discovery are in fact concluded. Plaintiffs, by contrast, reiterate that the standard for determining whether the potential plaintiffs are "similarly situated" is lenient, argue that their showing met the standard, and urge the Court to deny reconsideration.

## II. ANALYSIS

### A. Legal Standard for Certifying a Collective Action Under the FLSA

The FLSA requires covered employers to compensate non-exempt employees for time worked in excess of statutorily-defined maximum hours. See 29 U.S.C. § 207(a). Section 16(b) of the FLSA provides that an employee may bring a collective action on behalf of himself and other "similarly situated" employees. 29 U.S.C. § 216(b). In a §216(b) collective action, employees wishing to join the suit must "opt-in" by filing a written consent with the court. Id. If an employee does not file a written consent, then that employee is not bound by the outcome of the collective action. Leuthold v. Destination America, Inc., 224 F.R.D. 462, 466 (N.D. Cal. 2004). The court may authorize the named §216(b) plaintiffs to send notice to all potential plaintiffs, and may set a deadline for those plaintiffs to "opt-in" to the suit. Id.; see also Pfohl v. Farmers Ins. Group.,

2004 WL 554834 at *2 (C.D. Cal. 2004).

It is within the discretion of the district court to determine whether a certification of a §216(b) collective action is appropriate. Leuthold, 224 F.R.D. at 466. Although the FLSA does not require certification for collective actions, certification in a § 216(b) collective action is an effective case management tool, allowing the court to control the notice procedure, the definition of the class, the cut-off date for opting-in, and the orderly joinder of the parties. See Hoffmann-La Roche Inc., v. Sperling, 493 U.S. 165, 170-72 (1989). To certify a FLSA collective action, the court must evaluate whether the proposed lead plaintiffs and the proposed collective action group are "similarly situated" for purposes of § 216(b). Courts generally follow one of two approaches to determine whether the proposed plantiffs are "similarly situated": (1) evaluating the FLSA collective action in terms of Rule 23's class certification requirements; or (2) applying a two-step approach involving initial notice to prospective plaintiffs followed by a final evaluation whether such plaintiffs are similarly situated. See Leuthold, 224 F.R.D. at 466. Most Courts, including this one, prefer the two-step approach. See Edwards v. City of Long Beach, 467 F.Supp.2d 986 (C.D. Cal. 2006).

Under the two-step approach, the first step is for the court to decide, "based primarily on the pleadings and any affidavits submitted by the parties, whether the potential class should be given notice of the action." Id. at 467; see also Pfohl, 2004 WL 554834 at *2. The threshold question in deciding whether to authorize class notice in an FLSA action is whether the plaintiffs have demonstrated that potential class members are "similarly situated." Hoffmann v. Sbarro, Inc., 982

F.Supp. 249, 261 (S.D.N.Y. 1997); Grayson et al. v. K Mart Corp., 79 F.3d 1086, 1096 (11th Cir. 1996). Section 216(b)'s "similarly situated" requirement is less stringent than that for joinder under Rule 20(a) or for separate trials under Rule 42(b). See Flavel v. Svedala Indus. Inc., 875 F.Supp. 550, 553 (E.D. Wis. 1994) ("The 'similarly situated' requirement, in turn, 'is considerably less stringent than the requirement of [Rule 23(b(3)] that common questions 'predominate,' or presumably, the Rule 20(a) requirement that claims 'arise out of the same action or occurrence.'") It is the plaintiffs' burden to show that "the proposed lead plaintiffs and the proposed collective action group are 'similarly situated' for purposes of §216(b)." Leuthold, 224 F.R.D. at 466.

Given the limited amount of evidence generally available to the court at the first stage in the proceedings, this determination is usually made "under a fairly lenient standard and typically results in conditional class certification." Pfohl, 2004 WL 554834 at *2. "Plaintiff need not show that his position is or was identical to the putative class members' positions; a class may be certified under the FLSA if the named plaintiff can show that his position was or is similar to those of the absent class members. However, unsupported assertions of widespread violations are not sufficient to meet Plaintiff's burden." Freeman v. Wal-Mart Stores, Inc., 256 F. Supp. 2d 941, 945 (W.D. Ark. 2003) (internal citations omitted); see also Bernard v. Household Intern., Inc., 231 F. Supp. 2d 433, 435 (E.D. Va. 2002) ("Mere allegations will not suffice; some factual evidence is necessary.")

Plaintiffs must allege a violation that permits certification under § 216(b), such as a violation of the federal minimum wage or

maximum hours in a workweek and that the punitive class members share common identifiable facts or legal theories. See 29 U.S.C. §§ 206, 207. While a unified policy, plan, or scheme of discrimination may not be required to satisfy the liberal "similarly situated" requirement, some identifiable facts or legal nexus must bind the claims so that hearing the cases together promotes judicial efficiency. Grayson, 79 F.3d at 1095; Thiebes v. Wal-Mart Stores, Inc., 1999 WL 1081357 at *1 (D. Or. 1999). If a Plaintiff can make this showing, the Court conditionally certifies the class, and authorizes the plaintiff to give notice to the potential class members so that they may opt in to the proceeding.

The second step occurs once discovery is complete (or substantial discovery is complete) and the case is ready for trial. At that time, the party opposing §216(b) collective action treatment may move to decertify the class. Leuthold, 224 F.R.D. at 466 (citing Kane v. Gage Merchandising Svcs., Inc., 138 F. Supp. 2d 212, 214 (D. Mass. 2001). Whether to decertify is a factual determination, made by the court, based on the following factors: "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendants with respect to the individual plaintiffs; and (3) fairness and procedural considerations." Id. (citing Pfohl, 2004 WL 554834 at **2-3). If after examining the factual record, the court determines that the plaintiffs are not similarly situated, then the court may decertify the collective action and dismiss the opt-in plaintiffs without prejudice. Id. (citing Kane, 138 F. Supp. 2d at 214).

Where substantial discovery has been completed, some Courts have skipped the first-step analysis and proceeded directly to the second

step. See Pfohl, 2004 WL 554834 at *3 (noting that the parties agreed that there had been extensive discovery, and finding that it was therefore appropriate to proceed directly to the second step analysis; denied certification); Ray v. Motel 6 Operating, L.P.,1996 W.L. 938231 at 4 (D. Minn. 1996) (declining to apply "lenient standard at the notice stage" because the facts before the Court are extensive"); see also Hinojos v. Home Depot, 2006 WL 3712944 (D. Nev. 2006) (applying second step analysis, noting that it was clear that the named plaintiffs were not similarly situated, and that the action would not be manageable). But see Leuthold, 224 F.R.D. at 468 (holding that "[a]lthough it is a close question, given that extensive discovery has already taken place, the Court agrees with plaintiffs that the court ought to begin the FLSA class certification analysis with the question whether notice should be sent to the prospective class.")

In its June 14 minute order, the Court applied only the lenient "first tier" analysis on the basis that discovery was still ongoing. However, Defendants' Motion for Reconsideration clarified that "discovery as to class issues" was closed as of July 31, 2006 per stipulation and Court order. See p. 3, fn. 3. With discovery as to class issues concluded, the Court is in fact in a position to also apply the more rigorous "second tier" analysis. First, even though notice has not been sent to the entire class, Plaintiffs did contact 10% (1,500 persons) of the prospective plaintiffs. The responses to Plaintiffs' letters gave rise to the 33 declarations submitted with Plaintiffs' motion, and thus may be viewed as a fair sampling of the claims that this action involves. In other words, sending notice to the remaining 90% of the class is likely to yield similar types of

claims. Second, and in a similar "sampling" methodology, discovery was conducted as to 10% of defendants' store managers. Finally, Plaintiffs conducted discovery directed at Defendants' corporate management seeking evidence of a corporation-wide policy or practice of FLSA violations. Because such discovery is complete, and because the Court has before it a "sampling" of likely claims, this case is now sufficiently distinguishable from Leuthold such that the persuasive reasons for going no further than the lenient first tier analysis in that case do not apply here. Based on the sampling of the prospective plaintiffs' claims, the discovery taken on 10% of Defendants' store managers and on corporate employees, and on the fact that discovery as to class certification is complete, the evidentiary record before the Court is sufficient to warrant the more stringent second stage analysis.

**B. The Class Is Not In Fact "Similarly Situated".**

Given the posture of this case, the Court will determine, based on the substantial evidence before it, whether the potential class members are in fact similarly situated. Plaintiffs contend that "as a matter of policy and practice, [T-Mobile] engaged in violations of law concerning payment of employees and that such wage and hour violations occurred universally throughout the offices of T-Mobile nationwide over the last three years, affecting at least 15,000 hourly employees." Pls' Mot. 5:3-8. Plaintiffs allege a "systematic, company-wide disregard for wage and hour laws, countenanced and encouraged by higher management." Id. at 7:3-7. Insofar as Plaintiffs' declarations tend to show that some 33 potential plaintiffs were not paid overtime or worked off-the-clock, and that this non-payment was the result of store manager directions, they

would be sufficient to allow the Court "to determine that a definable group of 'similarly situated' plaintiffs can exist here," thereby warranting class notice. Hoffman, 982 F.Supp. at 261 (emphasis added). But where, as here, the declarations are the result of a sampling of 1,500 class members who chose to respond to Plaintiffs' letter, they may be taken as indicative of the quantity and nature of the claims any additional class members would pursue. Therefore the Court will determine whether these declarations do in fact reveal a similarly situated group with a common nexus consistent with the Complaint, not simply whether the declarations indicate that such a group may exist.

The substance of the declarations Plaintiffs submitted preclude the Court from finding that the plaintiffs are similarly situated. Plaintiffs' common allegation that Defendants unlawfully required them to work off-the-clock and denied them overtime pay arises out of different fact patterns: some declarants say that they were required to work "off-the-clock" at outreach events and training sessions; other say that they just worked extended hours not originally scheduled and were not paid for that time; others say that their store managers told them not to record their overtime in the first place; others say that store managers changed their time entries, thereby erasing overtime that had been recorded; other say they were allowed to record overtime during some periods of their employment, but prohibited from doing so during other periods. Plaintiffs are therefore not similarly situated. See Diaz v. Electronics Boutique of America, Inc., 2005 WL 2654270 (W.D.N.Y. October 17, 2005) (allegations that plaintiffs "worked off-the-clock without compensation and that [] timesheets were altered to delete overtime

hours worked [] are too individualized to warrant collective action treatment."); Burt v. Manville Sales Corp., 116 F.R.D. 276, 277 (D. Colo. 1987) (noting that a court can foreclose plaintiffs from proceeding in a collective action if "the action relates to specific circumstances personal to the plaintiff rather than any generally applicable policy or practice.") Thus, while plaintiffs' claim that they were illegally denied overtime pay is ostensibly a common legal nexus giving rise to a common injury, that commonality is illusory because the underlying allegations are disparate. Had Plaintiffs produced evidence that these injuries were the result of a common policy or practice, that might have provided a sufficiently substantial nexus to overcome the otherwise disparate nature of their claims. But, as discussed below, Plaintiffs' evidence does not demonstrate a common policy or practice.

Of equal importance is the slight number of responses to Plaintiffs' letter. Plaintiffs' allegation that there is a universal policy or practice that gave rise to violations throughout Defendants' offices nationwide is not supported by the quantum of evidence presented. A response rate of 33 out of 1,500 (approximately 2.2%) prospective class members to Plaintiffs' letter does not evidence a universal policy or practice. Although § 216(b) collective actions do not have a numerosity requirement like Rule 23(b) actions do, that Plaintiffs garnered only a slight response to their letter belies the allegation that the wrongdoing complained of is the result of a policy or practice in effect nationwide.

In addition, discovery with regard to 10% of Defendants' store managers failed to yield any evidence that any such policy or practice does exist. Although Plaintiffs reference two emails from retail

store manager James Earlie to his employees to the effect that the company would not pay overtime, Mr. Earlie retracted that statement in another email to his employees sent about two weeks later. Mr. Earlie's initial statements therefore do not support Plaintiffs' allegations, given his retraction shortly after making them. Plaintiffs have presented no similar statements by other store managers. It stands to reason that if Defendants employed such a policy nationwide or universally, then evidence of such a policy would have been discovered among the 10% of store managers who would have been responsible for implementing that policy or practice.

In contrast to the absence of discovery evidence showing a universal policy or practice, Defendants offered affirmative evidence that its corporate policy is to pay any overtime worked and that employees are prohibited from working "off-the-clock." See Defs' Opp'n 2:27-4:22. Thus, as class discovery is closed, and as the discovery on 10% of Defendants' store managers failed to yield evidence of any nationwide policy or practice, the proffered evidence indicates only sporadic violations arising out of individual circumstances, rather than violations stemming from a common impetus that could have rendered the plaintiffs "similarly situated." Ray, 1996 W.L. 938231 at 4 (in an FLSA case alleging non-payment of overtime wages, noting that, given no evidence rebutting corporate policy to pay overtime, "if an illegal scheme exists at all, it is implemented on a decentralized level . . . The evidence does not indicate that all the Plaintiffs sustained injury from one unlawful policy.")

Plaintiffs have not demonstrated that they are similarly situated based on either the content of the declarations or the substantial

discovery conducted. The only other evidence that would be probative of whether Defendants have a nationwide policy or practice is the number of responses to Plaintiffs' letter. But, because the responses were so few in proportion to the number polled (approximately a 2.2% response rate), they are not sufficient to support the allegation that Plaintiffs' losses - whatever the merits of their claims - are the consequence of a universal policy or practice. Further, insofar as Plaintiffs' claims rests on a patter or practice as opposed to a policy, the low proportion of responses is an even greater impediment to certification. See Maddox v. Clayton, 764 F.2d 1539, 1557 (11th Cir. 1985) (anecdotal testimony from a dozen employees from a potential class of over 500 is insufficient to show a pattern or practice because the evidence "was sparse, considering the size of the plaintiff class."); Reed v. Mobile County School System, 246 F.Supp.2d 1227, 1237 (S.D. Ala. 2003) (the evidence fails to "reflect that this has happened with sufficient frequency and breadth as to suggest a pattern or practice even within the interviewee's own school, much less defendant-wide.") See also International Broth. of Teamsters v. U.S., 431 U.S. 324, 336 (1977) (because plaintiffs "alleged a systemwide pattern or practice" of violations, they have to show "more than the mere occurrence of isolated or 'accidental' or sporadic discriminatory acts," rather, they have to show that the illegality was "the company's standard operating procedure[,] the regular rather than the unusual practice.")

Based on the diverse factual allegations underlying the claims, the lack of evidence of a policy or practice gained from discovery on a sampling of Defendants' store managers, Defendants' affirmative evidence that its corporate policies and practices do not violate the

FLSA's overtime provisions, and the low response rate to Plaintiffs' letter "testing" the prospective plaintiffs' claims, the Court concludes that the prospective opt-in Plaintiffs are not in fact "similarly situated."

SCANNED

**C. The Second Tier Factors Counsel Against Certification.**

The more rigorous second tier analysis usually includes a consideration of the following factors bearing on whether the potential plaintiffs are in fact similarly situated, and on manageability: "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendants with respect to the individual plaintiffs; and (3) fairness and procedural considerations." Pfohl, 2004 WL 554834 at **2-3. These factors also counsel against certification.

**1. Plaintiffs' Disparate Settings**

The 33 declarants who responded to Plaintiffs' letter are from 17 different states, and worked at 38 different store locations under at least 41 different managers. This diversity would only expand should the action be certified and additional Plaintiffs opt in. The individual plaintiffs are therefore clearly subject to disparate employment settings. Further, as discussed above, the plaintiffs' factual allegations are too diverse to support certification.

**2. Defendants' Defenses are Varied and Require Individual Determinations.**

The Defendants' defenses are as disparate and individual as the likely claims are. For example, Defendants submitted a declaration of Keith Kleckner, their payroll supervisor. Therein, Kleckner offers evidence purporting to refute the claim commonly made by 23 (of a total of 33) of Plaintiffs' declarants that they were never paid

overtime. Specifically, Kleckner states that he reviewed the time entry and payroll records for each of the 23 declarants, and that those records indicate that each declarant was in fact paid some degree of overtime. Defendants ask the Court to view the Kleckner Declaration as impeaching and thereby disproving the allegations in 23 of the Plaintiffs' declarations, thus negating the purported basis of their collective action. Were the Court to view the Kleckner Declaration as disproving Plaintiffs' declarations and thereby undermining their allegations, that would be considering (and deciding) the merits of Plaintiffs' claim. However, in determining whether to certify a class action or a collective action, the Court is not to consider the merits of the plaintiffs' case. See Hoffman, 982 F.Supp at 261. Some cases do suggest, with little explication, that to warrant conditional certification, the evidence plaintiffs submit must include affidavits that "successfully engage defendants' affidavits to the contrary," see, e.g., Hipp v. Liberty Nat. Life Ins. Co., 252 F.3d 1208, 1218 -1219 (11th Cir. 2001), quoting Sperling v. Hoffman-LaRoche, 118 F.R.D. 392, 406-07 (D.N.J. 1988) (judgment affirmed and remanded by Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165 (1989)). In this Court's view, that requirement - which does not appear to be widely-accepted in the FLSA context - could mean only that Plaintiffs must present evidence that tends to be contrary to Defendants' affidavits, that is, must produce evidence that raises an issue of fact. At the certification stage, it cannot be Plaintiffs' burden to disprove Defendants' defenses: certification is not the equivalent of summary judgment.[1]

---

[1] For example, Plaintiffs do not "successfully engage"

(continued...)

However, although the Court does not view the Kleckner Declaration as disproving Plaintiffs' allegations, the Kleckner Declaration does evidence the nature of the Defendants' defenses. Disputing the declarants' claims that they were "never" paid overtime required a review of each persons' time entry and payroll records. Testing other aspects of Plaintiffs' claims - such as that some of their unpaid work was never recorded - would entail additional individualized attention, including depositions of managers and co-workers, because by definition such lost time is not documented. Other defenses, such as that Defendants' managers did not know about off-the-clock work, that any claims are barred by specific defenses under the FLSA as to what constitutes 'work,' or the *de minimis* exception to the FLSA, must, by their nature, be individualized. Thus, Plaintiffs are not similarly situated with respect to how these defenses would be litigated against them.

**3. Procedural Considerations**

Based on the Plaintiffs' 33 declarations, it is apparent that, were this action to go forward collectively, it would involve individual plaintiffs from nearly every state, working in dozens - if not hundreds - of stores, under hundreds of managers. As discussed

---

[1](...continued) affidavits from Defendants' regional managers stating that Defendants do not have a policy of refusing to pay overtime and that their policy is to pay overtime. Plaintiffs submitted no contrary declarations from any current or former regional manager or store manager, and the Court found the 33 declarations insufficient to support an inference that such a policy or practice may exist nationwide. By contrast, Plaintiffs' 33 declarations <u>do</u> necessarily "engage" the Kleckner Declaration, because the 33 declarants swear to facts contradictory to Kleckner's proffered facts. Because it is not for the Court to decide whose version of the facts is correct, it must view the Kleckner Declaration as having been "successfully engaged" for purposes of certification.

above, given the nature of Plaintiffs' claims and defenses, classwide proof is not going to be available; accordingly, any claims and defenses must be made individually as to each Plaintiff. Although plaintiffs in collective actions do appear individually and not as a class, given all of the variables discussed above, proceeding collectively in this case would be unmanageable. Lawrence v. City of Philadelphia, P.A., 2004 WL 945139, *2 (E.D. Pa.2004) (holding that because individual off-the-clock claims potentially vary too widely, the questions of fact would most likely differ for each plaintiff, as each worked in different locations with different supervisors, and thus would be unduly burdensome to manage as a collective claim.)

**III. CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendants' Motion, and DENIES with prejudice Plaintiffs' motion for conditional certification.

**IT IS SO ORDERED.**

**DATED:** August 15, 2007

Audrey B Collins

**AUDREY B. COLLINS**
**UNITED STATES DISTRICT JUDGE**